UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARKUS EVANS,

        Plaintiff,

       v.                                       Case No. 24-cv-1372-bhl

TRISTAN RETZLAFF, et al.

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Markus Evans, who is currently serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. Evans paid the civil case filing fee in full on November 8, 2024. This matter comes before the Court for screening of the original complaint.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be

at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Evans is an inmate at the Green Bay Correctional Institution (GBCI). Dkt. No. 1, ¶2. Defendants are Security Director John Kind, Captains Michael Cole and Jay Van Lanen, Sergeant Tristan Retzlaff, and Lieutenants Anthony Matushak and John Lannoye. *Id*., ¶3.

In August 2012, Evans and Correctional Officer Todd Kazik (not a defendant) had an altercation at GBCI that resulted in Evans (1) receiving a conduct report for assault, (2) being criminally charged in Wisconsin state court, and (3) getting moved to the Wisconsin Secure Program Facility (WSPF). *Id*., ¶6. Evans returned to GBCI nine years later, in April 2021. *Id*., ¶7. At the time of Evans's return, CO Kazik had "moved up in rankings" and still held a grudge

against Evans. *Id*. He was also friends with Lt. Matushak, Capt. Cole, Lt. Lannoye, and Capt. Van Lanen. *Id*.

In July 2021, Lt. Lannoye told Evans, "I remember that incident with you and a certain officer some years back." *Id*., ¶8. Evans did not remember Lt. Lannoye at the time so he didn't know why the comment was made. *Id*. Then, about a year and a half later, in December 2022, Lt. Lannoye sent a confidential informant (inmate Willie McDougle) to ask Evans for drugs for the purpose of "setting [him] up" with false allegations of drug-dealing at the institution. *Id*., ¶¶9-10. Evans told McDougle that he had no information or involvement in drug-dealing at the institution. *Id*. McDougle responded that Lt. Lannoye was "trying to get some dirt on you" and had said, "we need something on [Evans], anything." *Id*., ¶10.

The next month, in January 2023, Lt. Lannoye ordered Evans' cell searched for drugs and directed that Evans and his cellmate be strip-searched. *Id*., ¶¶11-12. No drugs were found, but Evans was moved to the same cell block as inmate McDougle, who continued asking Evans for drugs he didn't have. *Id*., ¶¶12-13. Evans again stated that he was not involved in drugs or drug-dealing at the institution; and that staff were just trying to "retaliate" against him for the 2012 incident. *Id*.

On February 3, 2023, Evans stopped in front of inmate Vernon Nevlis' cell to chat with friends when he saw Nevlis' starting to have an "episode" and to engage in self-harm inside his cell. *Id*., ¶¶14-16. Thinking Nevlis was having a seizure, Evans instinctively entered the cell to try to help him. *Id*. He then realized that the seizure might have been drug-induced, so he left and sent his cellmate to assist. *Id*. Cpt. Cole, along with other correctional staff, also arrived to assist Nevlis. *Id*., ¶17.

3

Later that day, Capt. Van Lanen placed Evans and his cellmate in Temporary Lock-up (TLU) based on suspicion of assaulting Nevlis. *Id.*, ¶18. A different correctional officer then approached them to examine their hands; and Evans accused that correctional officer of "trying to set me up." *Id.*, ¶¶19-20. Evan noted that "my celly is just collateral damage for you people." *Id.*, ¶20. The correctional officer responded, "I'm the little guy just doing what [I am] told." *Id*. Other correctional officers later told Evans to get "nice and cozy" because he was "not going anywhere for a long time." *Id.*, ¶21.

On February 7, 2023, Sgt. Retzlaff issued, and Lt. Lannoye served, a false conduct report against Evans for "Aggravated Assault" and "Entry into Another Inmate's Assigned Living Area" in connection with the February 3 incident with Nevlis. *Id.*, ¶¶22-25. The conduct report referenced hallway camera footage showing the incident. *Id.*, ¶23. At that time, Lt. Lannoye offered a consensual resolution of 90 days in segregation and $1,000 restitution. *Id*. Evans again accused Lt. Lannoye of "setting [him] up." *Id*. Before leaving, Lt. Lannoye gave him a witness/evidence request form (DOC-73). *Id.*, ¶¶24-25. Evans used the form to request that Nevlis be a witness and asked to see camera footage of the incident. *Id.*, ¶25.

A week later, on February 14, 2023, Lt. Matushak went to Evans' cell to deliver another conduct report (unrelated to the previous one). *Id.*, ¶26. At that time, Lt. Matushak said, "I'm not going to give you any [Disciplinary Segregation] time on this cuz you're probably going to get it on the other [conduct report]." *Id*. Evans accuses Lt. Matushak of making a "pre-determination of guilt" and reports that he had emailed Security Director Kind later that day, prior to the due process hearing, requesting pre-approval of up to $1,000 restitution for medical bills. *Id.*, ¶¶27-29. Security Director Kind responded by pre-approving restitution up to $2,000. *Id*.

On February 23, 2023, Lt. Matushak held "a full due process hearing" on Evans' conduct report. *Id*., ¶¶30-34. Evans' witness request was denied, but he received an inmate advocate (Mr. Nusklewicz) and was allowed to read Evans's written statement on the record. *Id*. At the conclusion of the hearing, Lt. Matushak found him guilty based on videotape evidence along with the allegations in the conduct report and imposed a punishment of 300 days in segregation and $2,000 in restitution for Nevlis' medical bills. *Id*. Lt. Matushak allegedly said, "that 90 days don't look so bad now." *Id*., ¶34. Evans states that he had an Administrative Confinement re-hearing five months later, on July 18, 2023, and Capt. Cole determined that he should be left in segregation "indefinitely" for the assault on Nevlis. *Id*., ¶¶36-39.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Evans asks to proceed on a First Amendment retaliation claim as well as a Fourteenth Amendment due process claim. Dkt. No. 1, ¶¶40-46. The Court will address each claim in turn.

To state a First Amendment claim for retaliation, Evans must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707-08 (7th Cir. 2023) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

5

Evans fails to state a retaliation claim because he does not allege that he was retaliated against based on any protected speech or activity. Evans alleges that Defendants are taking actions against him because of an altercation he had with CO Kazik in 2012. He claims this 2012 altercation has led Defendants to "retaliate" against him by (1) "setting him up" for false conduct report for drug-dealing at the institution and (2) issuing him an actual conduct report for entering Nevlis' cell without authority and assaulting him. These allegations cannot support a First Amendment retaliation claim. Evans had no constitutional right to engage in an altercation with CO Kazik in 2012 and any interpersonal conflict between Evans and Nevlis stemming from that incident is not First Amendment "protected activity." If Evans had filed an inmate complaint or a lawsuit about the conflict and CO Kazik had responded to that protected activity by taking improper actions against him, Evans might state a claim. But Evans has not alleged that any of the actions he claims defendants are taking against him are in response to any form of First Amendment protected activity, *i.e.* filing an inmate complaint or lawsuit. Accordingly, he fails to state a claim for retaliation.

Evans comes closer to stating a claim when he invokes his Fourteenth Amendment due process rights. To state a Fourteenth Amendment due process claim, Evans must allege that: (1) he was deprived of a constitutionally protected liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). Disciplinary confinement deprives an inmate of his liberty interest when it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 964-65 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Court looks at the "combined import" of the duration of the confinement and the conditions endured. *Id*. (citing *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)). Once a liberty interest has been invoked, the Court looks to what process was due. *Id*. at 965-66. An inmate who is facing transfer to disciplinary

confinement is entitled to "informal, nonadversarial due process" with substantial discretion and flexibility left to prison administrators.  *Id.* (citing *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)).  Informal due process requires only that an inmate be provided (1) "notice of the reasons for the inmate's placement" in confinement and (2) "an opportunity to present his views," for instance, in a written statement or at a hearing.  *Id.*  "[T]he Supreme Court has made clear that '[o]rdinarily a written statement by the inmate will accomplish this purpose…So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.'"  *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

Evans' allegations are also insufficient to state a Fourteenth Amendment due process claim.  As a preliminary matter, he does not provide any information about the conditions of his confinement in disciplinary segregation.  To determine if a liberty interest is triggered, the Court must analyze both the duration and the conditions of his confinement.  For purposes of screening the Court will assume that being required to serve 300 days in segregation triggers a liberty interest.  Nevertheless, Evans's claim fails because his allegations show that he received the process he was due -- "informal, nonadversarial" process.  He admits that he was notified about the charges in writing on February 7, 2023; and that he received "a full due process hearing" on February 23, 2023 during which he received an inmate advocate (Mr. Nusklewicz) and was allowed to present his written statement.  He also admits that Lt. Matushak looked at the available evidence, including camera video and allegations in the conduct report, and rendered a decision.  Based on these allegations, Evans received "informal, nonadversarial due process" and he therefore has no Fourteenth Amendment due process claim.  Accordingly, the Court will dismiss the original complaint.

The dismissal is not final, however.  As a general matter, *pro se* plaintiffs are allowed at least one chance to amend an inadequately pleaded complaint.  *See Boyd v. Bellin*, 835 F. App'x

7

886, 889 (7th Cir. 2021). The Court will therefore give Evans an opportunity to file an amended complaint to cure the deficiencies described above, specifically to explain if he engaged in any First Amendment protected activity that triggered the alleged retaliation. The Court will enclose a guide for *pro se* prisoners that explains how to file an amended complaint that the Court can effectively screen. The Court also will include a blank prisoner amended complaint form. The Court will require Evans to use that form to file his amended complaint. *See* Civ. L. R. 9 (E.D. Wis.). Evans is advised that the amended complaint must bear the docket number assigned to this case. The amended complaint replaces the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If Evans files an amended complaint, the Court will screen it as required by 28 U.S.C. §1915A. If Evans does not file an amended complaint, the Court will likely dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the original complaint is **DISMISSED** because it fails to state a claim. Evans may file an amended complaint that complies with the instructions in this order **within 30 days of this order**. If Evans files an amended complaint by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If Evans does not file an amended complaint by the deadline, the Court will likely dismiss this case.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Evans a blank prisoner amended complaint form and a copy of the guide entitled "Guide to Filing Prisoner Complaints Without a Lawyer in the United States District Court for the Eastern District of Wisconsin," along with this order.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 517 E. Wisconsin Avenue, Suite 362
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Evans is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on January 21, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

9

Case 2:24-cv-01372-BHL   Filed 01/21/25   Page 9 of 9   Document 8